IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEIRDRE GARCIA.

      v.                                          C.A. NO. 15-2392

SCIENTIFIX, LLC.,
GEORGE LYNCH

**MEMORANDUM OPINION**

SCHMEHL, J. /s/JLS                                          FEBRUARY 1, 2016

       Plaintiff brought this action, claiming the defendants breached the terms of a non-disparagement clause in a settlement agreement entered into between the parties in a prior action. Plaintiff has also added claims for intentional interference with prospective contractual relations and defamation. Presently before the Court is the defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

       To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 55 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Legal conclusions and

1

recitals of the elements of a cause of action that are supported only by mere conclusory statements are to be disregarded. Santiago v. Warminster Twp., 629 F. 3d 121, 128 (3d Cir. 2010).

The Complaint alleges that from October 2005 until March 2012, plaintiff was employed by defendant Scientifix, LLC ("Scientifix") as a sales representative. Compl ¶ 7. Defendant George Lynch ("Lynch") is a corporate officer with Scientifix. Id. ¶ 6. On July 12, 2013, plaintiff filed an action in this Court captioned Deirdre Garcia v. Scientifix, LLC, George Lynch , Scott Stewart and Brian Foresta, E.D. Pa. No. 13-4074 (the "Prior Action"), alleging violations of the Pennsylvania Wage Payment Collection Law, 43 Pa.C.S. 260.1 and breach of contract. Id. ¶¶ 8, 9. The parties reached a settlement, the terms of which were set forth in a Settlement Agreement and Release ("Agreement") executed by all parties. Id ¶ 11, Ex. A.

Paragraph 6 of the Agreement provides:

> **Non-Disparagement.** Garcia agrees that she will not communicate, publish or release, indirectly or directly, in any medium or format, negative or disparaging comments or information about Scientifix, Lynch, Stewart and Foresta. **Scientifix, Lynch, Stewart and Foresta agree that they will not communicate, publish or release, indirectly or directly, in any medium or format, any negative or disparaging comment or information about Garcia.** (emphasis added).

Id. ¶ 12.

The Complaint alleges that plaintiff has over 20 years of experience in the educational institution laboratory construction industry. Id. ¶ 15. She is presently employed as Director of Business Development for Flatiron Construction Company ("Flatiron"), a full service general contractor in the Philadelphia area. Id. ¶ 16. At Flatiron, plaintiff is actively involved in preparing Requests for Proposal ("RFP") for educational institution projects, including

laboratory renovations. Id. ¶ 18.

In early April 2015, plaintiff circulated a RFP for laboratory work at Temple University to potential bidders, including Scientifix. Id. ¶ 19. Mott Manufacturing provides a large amount of laboratory equipment that is used in educational laboratory projects. Id. ¶ 21. Mott's exclusive designated dealer representative in eastern Pennsylvania is Scientifix. Id. ¶ 22. Plaintiff represented several Mott dealers since 1992. In fact, during her career, when the designated eastern Pennsylvania Mott dealer changed, plaintiff worked for the new dealer, which led to her former employment with Scientifix. Id. ¶ 23.

On April 24, 2015, shortly after Scientifix received the RFP for the Temple Project, Lynch forwarded an e-mail, using his Scientifix email address and Scientifx logo, to Marc Kleiman,a project manager for Flatiron and to Mario DiFonte, Vice President of Sales and Marketing for Mott under the subject "Future Bid Work" which stated, "Scientifix cannot and will not supply you with any pricing if Deirdre Garcia is involved in the project. I do not trust her ethics, she has shared our pricing with competitors in the past." Id. ¶ 24, Ex. B.

Plaintiff alleges that she has not shared Scientifix pricing with competitors in the past and has never exhibited any unethical conduct in her work within the educational institution laboratory construction industry. Id. ¶ 28. Plaintiff alleges that defendants portrayed her as unethical and untrustworthy to Mott for the purpose of harming her reputation in the laboratory construction industry. Id. ¶ 29.

In Count One of her Complaint, plaintiff alleges that defendants breached the non-disparagement clause of the Agreement by communicating, publishing and releasing negative and/or dispargaing comments and information about plaintiff. Id. ¶ 37.

3

Defendants argue in their motion to dismiss that the breach of contract claim must be dismissed because the non-disparagement clause in the Agreement is limited in scope to negative and disparaging comments arising only out of the Prior Action or made during plaintiff's employment with Scientifix. Defendants argue that the substance of Lynch's e-mail did not relate to the substance of the Prior Action and, therefore, did not violate the non-disparagement clause.

Under Pennsylvania law, the first step in interpreting a contract is to ascertain the intent of the parties. Truserve Corp.v Morgan's Tool & Supply Co., 39 A.3d 253, 260 (Pa. 2012). When the words of a contract are clear and unambiguous, the Court can determine the intent of the parties based on the common and plain meaning of the words used. Id. The Court must give effect to all of the provisions in the contract. Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001).

A clear and unambiguous contract is construed as a matter of law. Trizechahn Gateway, LLC v. Titus, 976 A.2d 474, 483 (Pa. 2009). If, however, the contract is ambiguous, it is for the factfinder to ascertain the parties' intent. Id. Merely because the parties interpret the contract differently does not mean that it is ambiguous. Espenshade v. Espenshade, 729 A.2d 1239, 1242 (Pa. Super. Ct.  1999). Only where the contract language is capably of being reasonably understood in more than one sense is a contract ambiguous. Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468-69 (Pa. 2006). Where the alternative meaning is unreasonable, there is no ambiguity. Murphy, 777 A.2d at 430.

Contrary to defendants' argument, the Court finds that the terms of the non-disparagement clause could not be more clear and unambiguous. Giving the words used their common and plain meaning, the Court finds that both plaintiff and defendants intended that

4

neither will communicate or publish any negative or disparaging information about the other. Period. There is no language anywhere in the provision that would limit its scope to claims arising from or relating to plaintiff's employment with Scientifix or to only the Prior Action.

An e-mail from Lynch to plaintiff's new employer, Flatiron, as well as to Mott whose dealers plaintiff has represented since 1992, stating that he does not trust plaintiff's ethics and accusing plaintiff of sharing Scientifix pricing with competitors in the past clearly qualifies as a negative or disparaging comment about plaintiff under the unambiguous terms of the non-disparagement clause, thereby constituting a breach of the non-disparagement clause of the Agreement.  As a result, the Court finds that plaintiff has alleged the existence of a contract with clear and unambiguous terms, a breach of the contract and resulting damages.

In Count Two of her Complaint, plaintiff alleges that she "has prospective contractual relations with customers whom she has known and developed over the course of [her] career in the laboratory industry." Id. ¶ 40. Plaintiff alleges that "these relationships constitute prospective contractual relations."  Id. ¶ 41. Plaintiff further alleges that defendants' actions in forwarding the e-mail "had the purpose and intent of harming [plaintiff] by preventing these relations from occurring." Id. ¶ 42.

Defendants argue that plaintiff herself was never a party to any contract between Flatiron and any bidder responding to an RFP and that plaintiff has failed to identify any actual contractual relation between her and any prospective customer with which defendants could have interfered.

In order to establish a claim for interference with an existing or prospective contractual relation, a plaintiff must plead: "(1) the existence of a contractual or prospective contractual

5

relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of the defendant's conduct." Crivelli v. General Motor Corp., 215 F.3d 386, 394 (3d Cir. 2000); see also, Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa. Super. 1997).

With regard to the first element, it is essential that plaintiff alleges a prospective contractual relationship between the actual plaintiff and a third person other than the defendant. Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc., 519 A.2d 997, 1000 (Pa. Super. 1987). The Pennsylvania Supreme Court has defined a "prospective contractual relation" as "something less than a contractual right, but something more than mere hope." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979). A plaintiff must establish a reasonable probability that but for the wrongful acts of the defendant, a contractual relationship would have been established. Thompson, 412 A.2d at 417.

Plaintiff alleges that she is employed by Flatiron, for whom she prepares Requests for Proposals for educational institution projects. Compl. ¶¶ 16-18. Plaintiff alleges that she circulated an RFP for a laboratory project at Temple University, that she sent the RFP to entities including the defendants, and that defendant Lynch responded to the RFP with the e-mail at issue. Id. ¶¶ 19, 24. Plaintiff further alleges that Lynch's conduct interfered with "contractual relations with customers whom [plaintiff] has known and developed over the course of his [sic] career in the laboratory industry." Id. ¶ 40.

Plaintiff, however, has failed to identify a specific, non-speculative prospective contract

6

between plaintiff and another entity with which defendants have interfered. Instead, plaintiff merely alleges that defendants interfered with "[unspecified] contractual relations with [unspecified] customers whom she has known and developed" over the course of her career. Id. ¶ 40. Indeed, according to the Complaint, plaintiff herself did not enter into any actual contracts, but rather her role was limited to preparing RFPs for her current employer, Flatiron. While defendants' actions may have interfered with plaintiff's prospective business relationships, there are no allegations that they interfered with any of plaintiff's contractual relationships. As a result, plaintiff has failed to satisfy the first element of a claim for intentional interference with prospective contractual relations–the existence of a prospective contractual relation between the plaintiff and a third party.

In Count Three, plaintiff alleges that the content's of Lynch's e-mail were defamatory, were published and specifically applied to plaintiff, the recipients understood that the e-mail was intended to apply to plaintiff, that plaintiff sustained special harm including impairment of reputation and standing in the community, personal humiliation and mental anguish, that the email was not made pursuant to a conditional privilege and that it was made with malice. Id. ¶¶ 46-51.

Defendants respond that the e-mail was sent to a limited audience in a strictly business context and that in any event the statement was conditionally privileged.

Under the applicable Pennsylvania statute, a plaintiff asserting a claim for defamation has the burden of proving:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

    (3) Its application to the plaintiff.

    (4) The understanding by the recipient of its defamatory meaning.

    (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

    (6) Special harm resulting to the plaintiff from its publication.

    (7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. Ann.§ 8343(a). "Whether a statement can reasonably construed as defamatory is a question of law for the court to decide." Rockwell v. Health, Educ. & Research Found., 19 F.Supp. 2d 401, 404 (E.D. Pa. 1998). In determining whether a statement is defamatory under Pennsylvania law, a court must examine the effect that statement is calculated to produce and "the impression it would naturally engender in the minds of the average persons among who it is intended to circulate." Id. at 405. A statement is defamatory "if it tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule, or injure him in his business or profession" or otherwise "lower[s] a person in the estimation of the community" or "deter[s] third persons from associating with him." Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). Courts should not dismiss defamation claims "unless. . . it is clear that the communication is incapable of defamatory meaning." Rapid Circuits, Inc. v. Sun Nat. Bank, No. 10-6401, 2011 WL 1666919, at *12 (E.D. Pa. May 3, 2011)(emphasis in original).

    Accepting the allegations in the Complaint as true, the Court has little trouble concluding that the statements contained in the e-mail from Lynch to Flatiron and Mott, questioning plaintiff's ethics and accusing her of sharing Scientifix's pricing with competitors are capable of defamatory meaning. The defamatory communication was published by Lynch in an e-mail to representatives of Flatiron and Mott and specifically referred to plaintiff. In addition, plaintiff

8

specifically denies that she has shared Scientifix pricing with competitors in the past Compl. ¶ 27.

Publication of a defamatory statement may nonetheless be permissible "if the publication was made subject to a privilege, and the privilege was not abused." Chicarella v. Passant, 494 A.2d 1109, 112-13 (Pa. Super. Ct. 1985). Privileged communications for the purposes of a defamation action are those "made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause." Id. at 1113 (internal citations omitted). Occasions "giving rise to conditional privileges are: (1) when some interest of the publisher of the defamatory matter is involved; (2) when some interest of the recipient of the matter, or a third party is involved; or (3) when a recognized interest of the public is involved." Beckman v. Dunn., 419 A.2d 583, 587 (Pa. Super. Ct. 1980).

Abuse of a conditional privilege results from publication: (1) driven by malice or negligence; (2) for a purpose other than that for which the privilege is given; (3) to a person not reasonably believed to be necessary to accomplishing the purpose of the privilege; or (4) including defamatory content not reasonably believed to be necessary to accomplish the purpose. Id. at 588.

While defendants may have a conditional privilege in sharing their opinion about plaintiff with a recipient/third party such as Flatiron and Mott, the plaintiff is entitled to show that defendants may have abused this privilege by showing that Lynch knew or should have known that the contents of the publication were not true. Plaintiff has alleged that defendants' e-mail was "motivated by malice and was made for a purpose other than that for which any privilege is given and was not reasonably to be necessary to the accomplishment of the purpose [of] any such

privilege." Compl. ¶ 52. Therefore, this issue needs to be fleshed out in discovery. The motion to dismiss the defamation claim is denied.